### 12703. FRONEBARGER *v.* THE STATE.

BROYLES, C. J. 1. It is well settled that upon the trial of one charged with assault with intent to rape, where the undisputed evidence shows that if any offense was committed it was either assault with intent to rape or assault and battery, a verdict finding the defendant guilty of a mere assault is contrary to the law and the evidence. *Harris* v.

*State,* 3 *Ga. App.* 457 (60 S. E. 127); *Owens v. State,* 9 *Ga. App.* 441 (2) (71 S. E. 680).

(*a*) In the instant case the evidence showed one or more assaults by the defendant on the female in question, but the evidence further showed that each assault was consummated by a battery either at the time of the assault or almost immediately thereafter. It follows that the defendant's conviction of a simple assault was contrary to law and the evidence, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*

DECIDED NOVEMBER 16, 1921.

Indictment for assault with intent to rape; conviction of assault; from Cherokee superior court — Judge Blair. June 18, 1921.

The indictment charged that the defendant made an assault upon a named female and attempted to have carnal knowledge of her forcibly and against her will. The woman testified, that the defendant came to her home in the absence of her husband, and, when told that her husband would be back pretty soon, he walked up behind her and cursed and said, " Oh, hell, he will stay a long time, and I am going to have my way now," and he grabbed her; she told him she " wouldn't," but she did not get loose then; he held her and told her there was no use to resist him, that he was going to outdo her if she " wouldn't give," but that he was " going to anyway;" he pulled her about half way through the hall of the barn, trying to get her into a stall there; she got loose from him by telling him to let her get the bucket out of the stable, that the mule was tearing it up. She testified further: " He quit pulling then and let me walk back and get the bucket out, but he didn't take his hand off of me. After I got the bucket out I whirled around like I was going to throw the water on him, and he turned me loose a little bit and we went on toward the house, and he followed me on until I got past the trail that turns into the house. . . The defendant was right behind me all the time and overtook me. . . I had . . tried to get away without him knowing it, but I didn't get away for a while, because he taken hold of me again in front of the house; . . he said then he wasn't going to let me leave there until he got through with me, and I told him I would too. He said, ' There is an old house just above the road, and I will put you in this old house up there,' and he tried to pull me toward the house . . I begged him to turn me loose, and I threatened him, and after I got past the house a piece I got loose and left . .

the defendant standing up against a tree." A witness testified that he saw them when he was at a distance of three or four hundred yards from them, and the defendant had hold of the woman, and seemed to be trying to hold her when she got loose and ran off five or ten steps, and that after talking with him she went on to the house of the witness. The defendant, in his statement at the trial, said that he met the woman and walked to the barn with her, talked a few minutes and walked back, taking her by the hand and talking with her as they walked, and holding her by the arm where the road was rough, and asked her to have intercourse with him, and " she resisted and turned around and walked off " a few steps, stopped and talked further with him, and he walked off and left her.

*Morris & Hawkins, Anderson & Roberts,* for plaintiff in error, cited: Penal Code (1910), § 19; 60 *Ga.* 509 (1); 9 *Ga. App.* 441 (2); 3 *Ga. App.* 457; 7 *Ga. App.* 44 (1); 10 *Ga. App.* 794, and cit.

*John S. Wood,* solicitor-general, *Lindley W. Camp,* cited 9 *Ga. App.* 441.