### 17777.  SIMMONS v. THE STATE.

LUKE, J.  "Upon the trial of one charged with assault with intent to rape, where the undisputed evidence shows that if any offense was committed, it was either assault with intent to rape or assault and battery, a verdict finding the defendant guilty of a mere assault is contrary to the law and the evidence." *Fronebarger* v. *State*, 27 *Ga. App.* 607 (109 S. E. 512), and cases cited. The foregoing being controlling, it is not necessary to discuss the grounds of the amendment to the motion for a new trial.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*

DECIDED JANUARY 11, 1927.

Indictment for assault with intent to rape; conviction of assault; from Bulloch superior court—Judge Strange.   October 28, 1926.

The indictment charged that the defendant made an assault upon a named female and attempted to have carnal knowledge of her forcibly and against her will. She testified: "I was going to Mrs. Johnson's and was about 50 yards from her house. I was going along down the road and I was running when I left the house, and he [the defendant] asked me where I was going to, and I told him none of his business, and he got hold of me, and I hollered and got away from him. When I got loose he said he was going to kill me the next time he got hold of me, and about that time Mr. Johnson came up. . . He did not say anything to me when he caught me. . . He said something to me after I hollered. He put his hands over my mouth to try and keep me from hollering. That is all I know about it. . . I went to school with this boy six or seven years ago. . . I have been knowing him all of this time. . . It was a moonlight night. . . He was ahead of me going down the road, . . and he kept on down the road. I caught up with him; . . he asked me where I was going. I told him I was going about my business, and then I started running; . . he caught up with me. . . Then I said he put his hands over my mouth. He didn't try to choke me, or beat me, and did not pull up my clothes. He did put his hands over my mouth. . . He didn't hurt me any. He didn't ask me about anything. I was hollering and scared and I couldn't tell what he said. I was scared when I left my home, and that was the reason I was running." It was testified that she said to a

Criminal Law, 17 C. J. p. 203, n. 87.
Indictment and Information, 31 C. J. p. 864, n. 28.

witness, who went to her on hearing her scream, that "a nigger had thrown her down," and that "the nigger threatened her." It was also testified that the defendant, after he had been arrested, "said he ran up and got hold of her, and she fell then;" that he did not intend to rape her, but that if he had been able to stop her hollering, "he was going to ask her for a piece;" that "he thought he would get him a piece, and that was the reason why he called to her."

*Francis B. Hunter,* for plaintiff in error.

*John C. Hollingsworth, solicitor-general,* contra.