GOODRUM *vs.* THE STATE OF GEORGIA.

[This case was argued at the last term and decision reserved.]

1. For a man, without some innocent reason or excuse, to put his arm around the neck of another's wife, against her will, is an assault and battery.

2. When she has testified, in behalf of the state, to the outrage, her husband is not a competent witness to throw discredit on her evidence, by proving that she delayed complaining to him when the opportunity to complain existed. Her silence is within the reason and spirit of the rule that guards confidence between husband and wife, and protects their respective communications from disclosure by either.

3. Where, in the progress of a criminal trial, the court observes that a rule of public policy has been, or is being violated in practice, the judge may, of his own motion, call attention to it, and have the proper corrective applied.

4. The competency of the husband to prove any fact in the case other than the wife's protracted silence, is not decided; there being, as to the other facts, no sufficient verification of the recitals touching the offer of evidence and the rulings of the court thereon.

Criminal law. Husband and wife. Witness. Practice in the Superior Court. New trial. Practice in the Supreme Court. Before Judge POTTLE. Madison Superior Court. March Term, 1877.

The motion for a new trial was based upon the following grounds:

1st. Because the court erred in ruling out the evidence of W. P. Smith, the husband of prosecutrix, of its own motion, after he had been examined by defendant's counsel and turned over to the state, such testimony having been admitted without objection.

2d. Because the court erred in refusing to allow said Smith to testify as to whether, on the night of the offense, he did not meet prosecutrix and defendant at the bars outside of the house.

3d. Because the court erred in holding said Smith to be an incompetent witness in this case.

These grounds the presiding judge certified with this explanation : The witness Smith had been sworn and examined without objection from the state. Before allowing the cross-examination to proceed, the court inquired upon what principle was this evidence admissible ? Counsel for the state then objected to the competency of Smith as a witness. This objection the court sustained so far as it related to the facts already detailed by him.

The only material part of his testimony thus excluded was as to the wife's silence in reference to the assault. There is nothing outside of the recitals in the motion for new trial, either in the bill of exceptions or the record, to show it was proposed to prove any other fact by him.

The motion was overruled and defendant excepted.

The remaining facts, so far as material, will be found in the opinion.

GABRIEL NASH ; J. B. ESTES ; WIER BOYD ; FRANK HAR-ALSON, for plaintiff in error.

SEABORN REESE, solicitor general, for the state.

BLECKLEY, Judge.

1. If to put the arm, though tenderly, about the neck of another man's wife, against her will, is not an assault and battery, what is it? Surely, the matrons of the land are not exposed to such an indignity at the pleasure of every libertine who, with no check from the law, may be rude and reckless enough to insult their virtue ! If it be said that it is a bare trespass, and that redress may be had in a civil action for the tort, is there, in the whole law, an instance of trespass by wilfully touching the person of another, which is not, at the very least, an assault and battery, unless the trespasser is wanting in capacity to commit crime ? To be a trespass, the touching must be unlawful, and if unlawful, it amounts, in legal contemplation, to violence. The definition of an assault is, "an attempt to commit a violent in-

jury upon the person of another"; and a battery is, "the unlawful beating of another." Code, §§4357, 4363. To beat, in a legal sense, is not merely to whip, wound, or hurt, but includes any unlawful imposition of the hand or arm. The slightest touching of another in anger is a battery. To touch a virtuous wife in the way of illicit love is a far greater outrage than to touch her in anger, and equally a breach of the peace. It is violence proceeding from lust, instead of violence proceeding from rage. It issues from the passion which, unrestrained, culminates in rape, instead of from the passion which culminates in homicide. Here, the act was done gravely and silently. No consent was asked or obtained; no explanation preceded or followed. That the woman's will did not concur is evident. She threw off the offending arm, and it was immediately replaced. If it were allowable to take a liberty of the sort once, here it was done twice. Her conduct was a warning not to proceed, and the warning was unheeded. The offensive act was repeated. The case bears no trace of jest or pleasantry. Both parties were apparently in profound earnest—the man in offering rudeness, and the woman in repelling it. No key to his behavior is furnished by any tie of consanguinity or affinity between them. So far as appears, they were not of kin. Nor was the occasion one of great joy, such as the reunion of old friends long separated. There was nothing to excite rapture or provoke enthusiasm. Why should he embrace her? Why persist in caressing her? That his advances were amatory, lascivious, there can be no doubt. He took the risk of not meeting with a responsive feeling in her, and must abide all the consequences of disappointment.

2. She was the state's witness, and testified to the outrage and the facts attending it. Her husband was not a competent witness to prove, in behalf of the prisoner, that she delayed complaining. What transpired between her and her husband, (whether positively by way of communication, or negatively by way of silence,) in the privacy and confidence of the marriage relation, is sacred. Neither can be

heard to reveal the *fact* or the *matter* of a communication made by the other. For the same reason, the *fact* of the other's silence ought to be, and, we think, is protected. A wife ought to feel, when alone with her husband, as free to be silent as to speak; and as secure that her silence will not be disclosed, to her detriment or disadvantage, as that what she says will not be repeated. So, too, of a man when alone with his wife. The twain are one flesh; and when they are secluded from all the world besides, their speech and their silence should be alike under the seal·of confidence, and·as free and unrestrained as the most inviolable confidence can inspire. The fact that the wife did not complain to her husband in their private, confidential intercourse was known to him, if at all, by virtue of that very intercourse; and all knowledge so acquired by husband or wife is inadmissible evidence in a court of justice, notwithstanding the enlarged rule as to the competency of witnesses established by the act of 1866. 40 *Ga.*, 150, 490.

3. The exclusion of the husband or wife, as to matters falling within conjugal confidence, is a rule of public policy. In this case, the court saw the rule undergoing violation. By some inadvertence, the solicitor failed to object, and the court, *ex mero motu*, interposed, and put an end to the violation. This was no infraction of law. 10 *Ga.*, 403; 11 *Ib.*, 92; 12 *Ib.*, 266, last paragraph.

4. Whether or not the husband was competent to contradict the wife, as to what may have taken place when not only her husband but the defendant also was present, is a question on which we pass no opinion. After scrutinizing the motion for new trial and the bill of exceptions, we hold that they furnish no sufficient verification of the recitals appearing in the grounds of the motion, respecting the offer of evidence and the rulings of the court thereon, save in the one point—that of the wife's silence.

Counsel cited Code, §§3797, 3854; 41 *Ga.*, 484, 613; 29 *Ib.*, 470; 1 Gr'l'f's Ev., §§337, 362.

Judgment affirmed.