### 7233.   YARBROUGH v. THE STATE.

The jury were warranted in finding that, under the circumstances shown by the evidence, the defendant, in laying his hand on that of the prosecutrix, was guilty of an assault and battery.

DECIDED APRIL 21, 1916.

Indictment for assault and battery; from Liberty superior court —Judge Sheppard. · November 6, 1915.

*James R. Thomas,* for plaintiff in error.

*W. F. Slater, solicitor-general,* contra.

WADE, J.  V. T. Yarbrough was indicted for the offense of assault and battery, committed upon Etta Rucker.  He was found guilty, and made a motion for a new trial, which was overruled, and he excepted.  The evidence discloses that the prosecutrix was a widow with three children, and the defendant was the husband of her sister; that he had been kind in rendering to the prosecutrix various helpful services, but finally disclosed the reason apparently prompting his acts of kindness, by making an improper proposal to her, and, contrary to her wishes and without her consent, laying his hand upon hers when seeking to induce her to consent to his carnal desires.  It is unnecessary to give the entire evidence.  It is sufficient for our purpose to give the following portions:  The prosecutrix, on her direct examination, said:  "In April, 1915, the defendant, V. T. Yarbrough, came to my house and plowed for me one day.  While he was there he told me that he could take care of another woman, other than his wife.  I told him that I was his wife's sister, and did not need any of his attentions or services.  He told me that he could prove to me by the Bible, in the book of Ruth, where it would not be any sin for me to cohabit with him.  Another day he came to my house and insisted that this was the Bible teaching, and that it would be no harm or sin to let him be my sweetheart.  I told him that as he had married my sister he would have to show me that it was no sin in the commission of the act that he was insisting on me to perform.  I also told him that we were brother and sister in the church, and that religious people could not carry on in such respect, and asked him to leave my house.  He laid his hand upon mine; I threw it off.  He did not touch me again.  This happened in Liberty county, Georgia, in June, 1915."  One of the members of the church committee appointed to interview the defendant (who was "a brother in the church") in reference to his conduct with Mrs. Rucker testified that the defendant admitted that he had perhaps "done wrong" in going to Mrs. Rucker's home, and that he "regretted his conduct in the matter," and further admitted "that he had read this book [the book of Ruth] to her, and told her that she had done him wrong because

she ought to have done as Ruth did, should have submitted as shown in the Bible in the book of Ruth." The defendant, in his statement and the jury, admitted that he had told the prosecutrix that she had failed to be with him "like Ruth was to Boaz, and as shown in the Bible," but denied that he had ever intentionally laid his hand upon her with evil desires or wishes. The prosecutrix was recalled, and testified, that the accused had insisted that she should be "his girl," and that her refusal caused unpleasantness between them; that she gave him no permission and did not do anything to authorize him to lay his hand upon hers. "He was not accustomed to laying his hands on me. . . He simply was sitting close to me and laid his hand on mine. I threw it off. He did not replace it, and did not attempt to touch me again."

It was held in *Goodrum* v. *State*, 60 *Ga.* 509, that "for a man, without some innocent reason or excuse, to put his arm around the neck of another's wife against her will, is an assault and battery." Judge Bleckley, delivering the opinion of the court, said: "If to put the arm, though tenderly, about the neck of another man's wife, against her will, is not an assault and battery, what is it? Surely, the matrons of the land are not exposed to such an indignity at the pleasure of every libertine who, with no check from the law, may be rude and reckless enough to insult their virtue. If it be said that it is a bare trespass, and that redress may be had in a civil action for the tort, is there, in the whole law, an instance of trespass by wilfully touching the person of another, which is not, at the very least, an assault and battery, unless the trespasser is wanting in capacity to commit the crime? To be a trespass, the touching must be unlawful, and, if unlawful, it amounts, in legal contemplation, to violence. The definition of an assault is, 'an attempt to commit a violent injury upon the person of another;' and a battery is, 'the unlawful beating of another.' Code, §§ 4357, 4363. To beat, in a legal sense, is not merely to whip, wound, or hurt, but includes any unlawful imposition of the hand or arm. The slightest touching of another in anger is a battery. To touch a virtuous wife in the way of illicit love is a far greater outrage than to touch her in anger, and equally a breach of the peace. It is violence proceeding from lust, instead of violence proceeding from rage. It issues from the passion which, unrestrained, culminates in rape, instead of from the passion which culminates in homicide. Here, the act was done

gravely and silently.   No consent was asked or obtained; no expla-
nation preceded or followed.   That the woman's will did not con-
cur is evident."   It will be observed in that case that the act of
the defendant in putting his arm about the neck of the female "was
done gravely and silently," no consent was asked or obtained, and
"no explanation preceded or followed."   Judge Bleckley said fur-
ther:  "The case bears no trace of jest or pleasantry.   Both parties
were apparently in profound earnest—the man in offering rude-
ness, and the woman in repelling it.  .  .   Why should he em-
brace her?   Why persist in caressing her?   That his advances were
amatory, lascivious, there can be no doubt.   He took the risk of
not meeting with a responsive feeling in her, and must abide all
the consequences of disappointment."

In the case now under consideration the purpose of the defendant
in placing his hand upon that of the woman was explained by what
preceded it.   According to her testimony, the act was immediately
preceded by improper advances on his part.   He requested her to
permit him to cohabit with her, and had attempted to demonstrate,
by "proofs of Holy Writ," that such cohabitation could be indulged
in by her without violating the divine law, at least.   In the light
of this testimony, his purpose in laying his hand upon hers is not
left to conjecture.   The fact that she was his sister-in-law fur-
nished no excuse for the liberty that he took, under the circum-
stances, and especially in view of her testimony that he was not in
the habit of placing his hands upon her; and, as suggested in the
*Goodrum* case, supra, there was no special reason for this unusual
demonstration, for there is nothing to show that the occasion was
one of great joy, such as a reunion of old friends long separated,
and there was nothing to excite rapture or provoke enthusiasm, and
the indecent proposal absolutely removes the suggestion that he in-
tended no offense by his conduct.   If a tender caress bestowed upon
another man's wife, without her consent, amounts to an assault and
battery, punishable under the law, how much more serious is the
offense when perpetrated upon one who has no husband to protect
her, and who, by reason of her partial dependence upon the of-
fender, is left open to his advances and is less able to interpose re-
sistance.

The complaint that the court erred in declining to grant a mis-
trial because the solicitor-general referred to the defendant, in his

argument to the jury, as a "brute" is without any substantial merit, when the note of the presiding judge is considered in connection with it, for it appears that when the motion for a mistrial was made, "the court stated to the solicitor-general that the statement was improper argument before the jury, and instructed the jury that they must not consider the remark of the solicitor-general, and the solicitor-general properly withdrew the remark and asked the jury not to consider the remark." Considering the relationship between the defendant and the woman against whose virtue the accused attempted an assault, and accepting her testimony as true, the solicitor-general was apparently justified in his conclusion that the defendant was a "brute;" but the remark was nevertheless improper and deserved the rebuke which the court immediately gave to the solicitor-general, coupled with the instruction to the jury that they must not consider it. The harm, if any, was so far corrected by the rebuke and the instructions referred to that we can not say that the trial judge abused his discretion in overruling the motion for a mistrial.

In the state of the entire record it is not made to appear that the admission by the court of the testimony of the prosecutrix that she was "a widowed woman with small children, and owned and possessed virtually no property," demands a reversal.

There is no substantial merit in the remaining special grounds of the motion for a new trial. The evidence sufficiently supported the verdict, and the trial judge has approved the finding of the jury.

*Judgment affirmed.*