Darlene M. KIDWELL, Plaintiff,

v.

SHEETZ, INC., Fox Mountain, Inc., Michael Rinker, Robert Campbell, Defendants.

Civil Action No. 95–0083–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

Sept. 15, 1997.

James A. Klenkar, Hall, Monahan, Engle, Mahan & Mitchell, Winchester, VA, for Darlene M. Kidwell.

Glenn Milburn Hodge, Cathleen P. Welsh, Thomas E. Ulrich, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, for Michael Rinker.

Thomas J. Flaherty, Elizabeth A. Lalik, Hunton & Williams, McLean, VA, for Robert Campbell, Sheetz, Inc., Fox Mountain, Inc.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this court referred this Title VII, 42 U.S.C.

§ 2000e *et seq.*, action with supplemental State law claims to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court. On May 9, 1997, the Magistrate Judge filed his Report and Recommendation, which recommends granting defendants' motion for summary judgment in favor of all individual and corporate defendants on Count V (sexual assault and battery) and Count XII (defamation), and in favor of defendants Sheetz, Inc. ("Sheetz") and Fox Mountain, Inc. ("Fox Mountain") on Count VI (assault and battery) and Count XI (breach of contract). The Report also recommends denying summary judgment to defendants on Count I (*quid pro quo* sexual harassment), Count II (hostile work environment sexual harassment), Count III (retaliation), and Count VI (assault and battery) as to defendant Campbell. Defendant Rinker does not seek summary judgment on plaintiff's assault and battery claim against him.

Kidwell, Rinker and the remaining defendants filed Objections to the Report and Recommendation on June 6, June 4 and June 6, 1997, respectively. Said objections having been timely and appropriately lodged, this court has undertaken a *de novo* review of the case. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

After a thorough examination of the parties' objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation itself, this court partially adopts the Report and Recommendation but, because it considers certain of the parties objections well-taken, it declines to adopt the Magistrate Judge's recommended disposition of COUNTS I and VI for the reasons stated herein.

### I. Factual Background

The Report and Recommendation thoroughly recounts the facts of this case, as stated by this court in a memorandum opinion of September 13, 1996 granting, in part, and denying, in part, defendants' motions to dismiss. Briefly stated, the plaintiff, Darlene M. Kidwell, formerly worked as a cashier for Sheetz and Fox Mountain. Kidwell claims that throughout her employment, she was subjected to unwelcome sexual harassment by defendants, Rinker and Campbell, the store manager and district manager, respectively.

According to plaintiff, Mr. Rinker regularly touched his genitals in her presence and in the presence of other female employees; he made repeated sexual remarks, such as "Ooh, look at what she's got," "It sure would be nice to be with her," and "It doesn't matter where I get my appetite as long as I eat at home,"; Mr. Rinker frequently read and commented upon pornography during work hours; Mr. Rinker intentionally pressed his genitals against plaintiff on one occasion; and Mr. Campbell engaged in unwelcome physical contact with plaintiff. When plaintiff protested or requested Messrs. Rinker and Campbell to stop touching her, she claims they retaliated against her: she was falsely accused of violating company policy and, allegedly on this pretext, terminated by Rinker and Campbell. Following her discharge, Ms. Kidwell filed a timely charge with the EEOC and thereafter commenced this multi-count Title VII action, with pendent State law claims.

### II. Title VII Claims

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is actionable, then, because it affects conditions of an individual's employment and it occurs because of the individual's sex. Sexual harassment can take two distinct forms. First, when a supervisor demands sexual consideration in exchange for job benefits *Katz v. Dole,* 709 F.2d 251 (4th Cir.1983) actionable *"quid pro quo"* harassment will lie. *Spencer v. General Electric, Co.,* 894 F.2d 651 (4th Cir.1990). The second type of sexual harassment is that which creates an offensive or hostile work environment ("conditions of work"). *Katz,* 709 F.2d 251. Finally, retaliation for complaining of or seeking redress of Title VII violations is also

actionable. *Ross v. Communications Satellite Corp.* 759 F.2d 355, 365 (4th Cir.1985).

## A. Quid Pro Quo Sexual Harassment

■ Defendants' objections to the Magistrate's recommendation that summary judgment be denied on this claim are meritorious. Plaintiff fails to meet one crucial prong of the five–element *prima facie* test of *Spencer v. General Electric, Co.,* 894 F.2d 651, 658 (4th Cir.1990) required to establish a presumption of *quid pro quo* sexual harassment. To be sure, Ms. Kidwell, a woman, (1) belongs to a protected group under Title VII; she alleges, at least, (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment complained of was based upon sex; (4) that her reaction to the harassment affected tangible aspects of the compensation, terms, conditions, or privileges of her employment and that the acceptance or rejection of the sexual harassment was an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment; and (5) that the employer knew or should have known of the harassment but took no effective remedial action.[1]

Once a plaintiff makes out the *prima facie* case, "an inference that *quid pro quo* sexual harassment has occurred arises and the burden of production shifts to the defendant to rebut the presumption with legitimate, nondiscriminatory reasons for the employment decision in question." *Id.* at 659 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668(1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)).

"If the presumption is rebutted, the burden of production returns to the plaintiff to show that the defendant's proffered nondiscriminatory reasons are pretextual and that the employment decision was based on a sexually-discriminatory criterion." *Id.* (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095).

Defendants, Sheetz, Fox Mountain, and Mr. Campbell, argue in their instant objections that the plaintiff has failed to state a *prima facie* claim of *quid pro quo* sexual harassment under *Katz* and *Spencer* because she has offered no evidence that defendants demanded sexual favors from Ms. Kidwell in exchange for or in consideration of job benefits. Defendants premise this argument on *Spencer's* reasoning that *quid pro quo* harassment occurs only when "sexual consideration is demanded in exchange for job benefits." 894 F.2d at 658; *see also, Katz,* 709 F.2d at 254 (*quid pro quo* sexual harassment is "harassment in which a supervisor demands sexual consideration in exchange for job benefits. . . .") Implicit in *Spencer's* and *Katz'* analyses is the very definition of the term *quid pro quo,* namely, "[w]hat for what; something for something. Used in law for the giving one valuable thing for another. . . ." Black's Law Dictionary (Sixth Ed.) (West 1990) (A loose translation of *"quid pro quo"* as "this before that" gives a clearer understanding of the phrase.)

Taking all inferences in favor of the plaintiff, Ms. Kidwell has adduced evidence tending to indicate some connection between the alleged *quid pro quo* " 'sexual conduct and some economic benefit or detriment' " *Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114 (W.D.Va.1996) (quoting *Walker v. Sullair Corp.,* 736 F.Supp. 94, 100 (W.D.N.C.1990) (citing *Spencer,* 894 F.2d at 658)). She has presented evidence of several job detriments she allegedly suffered when she rejected what she interpreted as defendants' sexual overtures: a heavier workload, less favorable scheduling, unfair performance evaluations which affected bonuses, and termination. Pl's Mem. at p. 23 (citing Kidwell deposition testimony); Pl's Mem. at p. 14 (citing Kidwell Dep. at p. 51–53). Missing from the record, however, is any evidence that Rinker or Campbell ever actually demanded sexual favors or asked Kidwell out for dates; the plaintiff concedes as much. (Kidwell Dep. at 51–53) While evidence of alleged job detriments may be relevant to the fourth prong of

---

1. Under 42 U.S.C. § 2000e(b), knowledge of sexual harassment, if any, "is imputed to the employer through its agent–supervisor." *Spencer,* 894 F.2d at 658 n. 10; *see also Martin v. Cavalier* *Hotel Corp.,* 48 F.3d 1343, 1351 n. 3 (4th Cir. 1995) ("[I]n *quid pro quo* sexual harassment cases an employer is automatically liable for its supervisor's conduct.").

*Spencer's prima facie* test, it does not satisfy the second such prong.

To be sure, under *Hott,* the court at summary judgment is invited to look to "a broad spectrum of circumstances," 922 F.Supp. at 1123, in finding that a plaintiff has suffered to a job detriment. As well, *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771 (D.Nev.1992) contains language supporting the notion that evidence of hostile work environment sexual harassment also might support a simultaneous claim of *quid pro quo* sexual harassment. Id. at 777 ("[I]t is certainly feasible that the factual basis for a *quid pro quo* allegation and a hostile environment allegation may overlap.").

This court is of the opinion, however, that plaintiffs claim and supporting evidence appear to concern purely hostile work environment sexual harassment. The court is persuaded by other language in *Canada* to the effect that:·

> In the case at bar, [p]laintiff has presented no evidence to support a claim that any supervisor used his authority to extort sexual favors from her. *Plaintiff offers no evidence of statements or actions by any [d]efendants .... that indicate that [p]laintiff's continued employment, or other employment benefits, were contingent on her granting sexual favors. The fact that [p]laintiff believed [a supervisor] treated her badly because she was unresponsive to him is not sufficient to support an allegation that [the supervisor] was using sex as a criterion for employment benefits.* There is· no evidence to suggest employment benefits were withheld from [p]laintiff. Rather, [p]laintiff claims that she was subjected to sexually inappropriate conduct by [the supervisor] and that she was not allowed to leave early or have others work her shifts. To some extent the denial of these favors may be considered employment benefits; however, ·*they much more directly reflect the environment in which [p]laintiff had to work.*
>
> Id. at 777 (emphasis added).

Ms. Kidwell presents insufficient evidence to make out a *prima facie* case of *quid pro quo* harassment under prong two of the *Spencer* test. Thus, she is unable to survive

defendants' motions for summary judgment, there being evidence of a harassing work environment, but no evidence of any demand for sexual favors and the consequent offer of favors if the employee acquiesces or threat of detriment if the employee refuses the demand. She establishes no genuine issue of material fact for a fact finder to resolve because her *quid pro quo* sexual harassment claim lacks the predicate requirement under the *Spencer* test that sexual favors as consideration for job benefits were demanded of her by any defendant. Plaintiffs *quid pro quo* allegation ultimately lacks the necessary "if / then" logical connection between events that was present in *Hott,* 922 F.Supp. at 1123 (evidence that "*if* [plaintiff] wanted the extended lunch break, *then* she should accept the supervisor's offer for a date" held sufficient for *quid pro quo* claim to survive summary judgment motion) (emphasis in original).

·A final concern of the court here lies in the relationship between a *quid pro quo* charge and a hostile environment charge. The first statement from *Canada* quoted *supra* at 1181 contains troubling consequences for the distinctions between the two types of sex discrimination charges. Applying· *Canada's* first quoted statement's own terms, a hostile work environment of a sufficient severity can constitute *"quid pro quo"* sexual harassment without any requirement of a stated exchange of job ·benefits 'or detriments occurring from acceptance or rejection of an offer or request for sexual favors. Such an exchange must· underlie the *"quid pro quo"* claim or the language of ·"this for that" is simply meaningless.

It is surely possible that a single case may present facts which would support both a *quid pro quo* claim and a hostile work environment claim, in that the *quid pro quo* claim could well be a part of the hostile environment, but the *quid pro quo* claim still would require the essential element of the request for sexual favors.

· Cursory reflection shows, however, that this interrelationship does ·not work in reverse. No matter how severe the hostile work environment may be, that environment

alone cannot in logic also support a *quid pro quo* claim where such a claim depends only on that hostile environment.

In the second quotation from *Canada, supra* at 1181, the court there turned away from a subjective test and by strong implication supported an objective standard. Such a standard appears entirely appropriate in this context, recognizing that a subjective test would, in effect, pose few or no limits on the *quid pro quo* claim.

It is important to recognize the necessity of sharp distinctions between the two types of claims. Failing to do so, in effect, simply merges the *quid pro quo* claim into the hostile environment claim. Such a result may be desirable, but it is not legally proper. This court, therefore, declines to adopt the Magistrate Judge's recommendation and grants defendants' motion for summary judgment.

*B. Hostile Environment Sexual Harassment*

■ Defendants' objections to the Magistrate's recommendation that summary judgment be denied on this claim are without merit. Sexual harassment based on a hostile work environment exists "where there are sexual advances, fondling or a sexually suggestive workplace atmosphere that the claimant finds unwelcome." *Walker v. Sullair Corp.*, 736 F.Supp. 94, 100 (W.D.N.C.1990). "Hostile work environment is characterized by a workplace 'pervaded with sexual slur, insult and innuendo, ... verbal sexual harassment, ... or extremely vulgar and offensive sexually related epithets' directed to or about an employee." *Id.* (quoting *Katz*, 709 F.2d at 254).

In order to prevail against a motion for summary judgment on a hostile work environment claim, plaintiff must make a *prima facie* showing that sexually harassing conduct occurred, and that the employer knew or should have known about the harassment but took no effectual steps to correct or prevent it. *Katz*, 709 F.2d at 256. In order to demonstrate hostile environment, the plaintiff must produce evidence that the conduct was unwelcome, that the harassment was based on sex, and that it was sufficiently severe or pervasive to create an abusive work environment. *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987); *see also Hammill v. Albemarle County School Bd.*, Civil Action No. 93–00031–C, 1994 WL 147753 (W.D.Va. April 18, 1994).

In a "hostile work environment" sexual harassment case, "the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action." *Katz*, 709 F.2d at 255 (citing *Henson*, 682 F.2d at 905).

The defendants' objections claim that because Ms. Kidwell failed to use the corporate defendants' existing sexual harassment procedures, her instant claim should be barred. In *Katz*, the court stated that "to avoid liability under Title VII, an employer on notice of sexual harassment must do more than indicate the existence of an official policy against such harassment." *Katz*, 709 F.2d at 256. The Court of Appeals for the District of Columbia has held that "an employer may not be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences." *Gary v. Long* 59 F.3d 1391, 1398 (D.C.Cir.1995); *see Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 110 (3d Cir.1994) (holding that effective grievance procedures insulate the employer). An effective policy is one which is "calculated to encourage victims of harassment to come forward," *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), one about which employees know, and one that provides clear avenues for relief *Gary*, 59 F.3d at 1398–99.

Defendants point to the following evidence in support of their claim that their anti–harassment policy was effective.

(1) The policy explicitly forbad sexual harassment. The policy stated as follows:

Sheetz strictly prohibits harassment in any form including sexual harassment from employees, management, vendors, or customers. Any employee who perceives they are being harassed should report this harassment to their supervisor or other appropriate management immediately or call the Employee Help Line at 1–800–745–9666.

Defs.' Mem. at p. 37, Exhibit 2.

(2) The policy was communicated to plaintiff at least seven times during her two years of employment.

(3) The policy provided relatively straightforward method by which to register complaints; a helpline was provided for employees.

(4) The individual defendants received training regarding sexual harassment.

(5) According to testimony of Ms. Schaper, who is in charge of investigating complaints of sexual harassment, when investigations confirmed charges of sexual harassment, defendants enforced the policy through methods ranging from counseling to discharge.

(6) Prior to February 1995 (two weeks before her termination) plaintiff had only complained about the alleged harassment to Mr. Rinker, even though the harassment allegedly began in the summer of 1994.

Plaintiff counters that defendants' anti-harassment policy was not effective. Pl's. Mem. at pp. 6–7, 14–17, 8–30. In support, she asserts:

(1) Employees did not understand the procedures.

(2) The procedures were not effectively enforced, a claim supported by the store's current manager, and other employees, who testified the procedures were not effective.

(3) The policy suggested that the employee could contact the alleged harasser initially; after plaintiff notified Ms. Schaper, she was instructed to arrange a meeting between herself and Mr. Campbell, even though he allegedly was involved in the harassment. (One day before the scheduled meeting, plaintiff was fired.)

(4) The policy was refurbished one year after plaintiff was terminated.

(5) The individual defendants did not understand the policy, which, plaintiff claims, is evidenced by their deposition testimony where they revealed uncertainty as to what conduct qualified as sexual harassment.

As to plaintiff's first argument, this court is skeptical; it is impossible not to understand a policy as clearly stated as defendants' is, and one introduced to plaintiff on seven different occasions. The third argument also does not undermine defendants' anti-harassment policy. In the first place, it is logical to attempt a resolution with the individual that is the source of the problem before complaining to others; moreover, the policy provides an avenue for complaining to higher–ups instead of or after notifying the alleged harasser. The fourth argument does not demonstrate the ineffectiveness of the previous policy; rather, it only shows defendants wish to further insulate themselves from Title VII liability. Nor does the fifth argument make any headway—the company conducted extensive training of its employees to prevent sexual harassment; if the individual defendants do not understand the policy, their failing cannot be attributed to the corporate defendants.

Nonetheless, plaintiff's second argument alone suffices to preclude summary judgment, for it creates a material factual dispute between the testimony of Ms. Schaper, who testified that enforcement was effective, and other employees (*e.g.*, Ms. Thomas, the store's current manager[2]) who testified the policy was not enforced. Plaintiff's own experience surely casts doubt on the efficacy of the policy—plaintiff was referred back to her alleged harasser by Ms. Schaper. *Cf. Meritor*, 477 U.S. at 72–73, 106 S.Ct. at 2408 ("Finally, we reject ... [the] view that the mere existence of a grievance policy against discrimination, coupled with respondent's failure to invoke that procedure, must insulate [the employer] from liability. While those facts are plainly relevant, the situation before us demonstrates why they are not

---

**2.** While the court notes that Ms. Thomas is the plaintiff's sister, determinations of credibility or bias, if any, are properly made by the trier of fact.

necessarily dispositive. [The employer's] general nondiscrimination policy did not address sexual harassment in particular, and thus did not alert employees to their employer's interest in correcting that form of discrimination.... Moreover, the [employer's] grievance procedure apparently required an employee to complain first to her supervisor, in this case [the alleged harasser]. Since [the supervisor] was the alleged perpetrator, it is not altogether surprising that respondent failed to invoke the procedure and report her grievance to him.").

As to defendants' objection that the corporate defendants lacked actual or constructive notice of the alleged harassment, plaintiff testified that she notified Ms. Schaper, the corporate officer charged with receiving and investigating employee grievances, of the individual defendants' alleged harassment. As well, plaintiff testified that a district manager of Sheetz, David Woodley, observed at least some of the alleged sexual harassment by Messrs. Rinker and Campbell. Finally, other employees of Sheetz complained about the defendants' conduct even before Kidwell herself did. Thus, unlike in *Andrade v. Mayfair Management, Inc.,* 88 F.3d 258, 261 (4th Cir.1996), there exists evidence for the fact finder to weigh and consider that the corporation "knew or should have known" of the alleged harassing behavior. With such evidence of corporate notice alleged, denying defendants' motion for summary judgment does not violate at all *Andrade*'s holding that corporate liability cannot be automatically imputed.

■ Finally, as part of defendants' objections to the recommended disposition of the hostile work environment claim, they object to allegations that Ms. Kidwell was forced to clean up Mr. Rinker's semen after he masturbated in a company bathroom toilet because such charges were not alleged in her EEOC charge. While "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint," *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 962–63 (4th Cir.1996), contrary to defendants' objection, *Evans* does not require Title VII plaintiffs to allege all conduct they suffered in violation of Title VII in their EEOC charge. Rather, established Fourth Circuit precedent demands only that discrimination claims be stated in the initial EEOC charge. *Id.* at 963. In *Evans,* for instance, the plaintiff's age discrimination claim, her sexual harassment claim and her claim of discrimination in pay and benefits were held to be beyond the scope of her EEOC charge, where she alleged only that her employer failed to promote her because of her sex. There is no dispute that plaintiff alleged in her EEOC charge that she was subject to hostile work environment sexual harassment; no more that this is necessary to put defendants on notice of the charges made against them. Thus, the "bathroom incident" allegations will not be barred simply because they were not specifically raised in Kidwell's EEOC charge.

For these reasons, this court adopts the recommendation of the Magistrate Judge and denies defendants' motion for summary judgment on the hostile work environment claim.

### C. Retaliation

■ To proceed on a claim of retaliation, a plaintiff must establish a *prima facie* case showing (1) she engaged in protected activity, (2) her employer took adverse action against her, and (3) there was a causal connection between the protected activity and the adverse action. *Ross,* 759 F.2d at 365. If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non–discriminatory reason for the adverse action suffered by the plaintiff. *Id.* If the employer proffers such a reason, the burden shifts back to the plaintiff to show that the purportedly legitimate reason is, in fact, pretextual. *Id.* The plaintiff must ultimately show that "but for" the protected conduct no adverse action would have been taken against her. *Id.* at 366.

Defendants make one objection: plaintiff fails to make the "but for" showing and, consequently, fails to rebut defendants' proffered legitimate non–discriminatory reason. For the reasons as stated above with respect to the hostile environment claims, this court thinks that defendants have met their burden in articulating a legitimate non–discriminato-

ry reason, but that plaintiff has produced enough evidence as to pretext to survive summary judgment. Testimony from the current store manager that some of defendants' employees were not fired even after failing to mark voided sales slips immediately (the asserted non–discriminatory reason for plaintiff's dismissal) suffices to create an issue of fact and allows this claim to survive summary judgment. A reasonable trier of fact could conclude from this evidence that the decisions defendants took adversely impacting Ms. Kidwell's job, including her termination, in reality owed to her decision to complain about the alleged hostile environment sexual harassment and that thereby her rights under Title VII had been violated.

## III. State Law Claims

### A. Sexual Assault and Battery

■ Defendant Rinker objects to the Report and Recommendation because he maintains that no cause of action for sexual assault and battery exists. This argument has already been rejected by this court in this very case. Memorandum Opinion of September 13, 1996. The Fourth Circuit and another division within the Western District of Virginia have assumed the cause of action to exist. *See, Jamison v. Wiley,* 14 F.3d 222 (4th Cir.1994); *Pizzino v. J. Dillard Hutchens Corp.,* 1996 LEXIS 14291 (W.D.Va. Aug. 8, 1996) (Kiser, J.).

The only contrary authority Rinker cites is *Fox v. Rich Prods. Corp.,* 34 Va. Cir. 403 (1994). Although it does not discuss or analyze the issue at all, the court in *Fox* subsumed the plaintiff's sexual assault and battery claim into her simple assault and battery claim. The heading preceding this one sentence decision (to subsume) states that the two constitute the "same action." Nonetheless, this court rejects the argument that the tort does not exist because (1) this court has already ruled on this issue; (2) the Fourth Circuit and Judge Kiser have assumed a cause for sexual assault and battery to exist; and (3) the *Fox* decision comes from a lower court in Virginia and itself assumes the nonexistence of the tort without any discussion or analysis.

■ Virginia law, then, recognizes a distinct cause of action for sexual assault and battery. The use of force, threat, or intimidation is a necessary element of the cause of action, analogizing from the criminal context, where this is required. *See Clark v. Commonwealth,* 12 Va.App. 1163, 408 S.E.2d 564 (1991); *Johnson v. Commonwealth,* 5 Va. App. 529, 365 S.E.2d 237 (1988).

■ Because Rinker also claims, in the alternative, that because there is no evidence that he used force, threats, or intimidation in touching plaintiff, he is entitled to summary judgment, which the Magistrate Judge now recommends. Plaintiff objects and asserts, in a conclusory manner, that the use of force, threat, or intimidation was present here. Pl's. Mem. at p. 34. Because there is no evidence in the record to support her claim, apart from the fact that the alleged conduct was committed by supervisory personnel, the court grants Rinker's motion for summary judgment. For the same reasons, the other defendants' motions for summary judgment on this claim also are granted.

### B. Assault and Battery

#### 1. Individual Defendants

■ The "slightest touching of another, or of his clothes, cane, or anything else attached to his person, if done in a rude, insolent or angry manner," may be actionable as the tort of assault and battery under Virginia state law. *Wood v. Commonwealth,* 149 Va. 401, 140 S.E. 114 (1927); *Crosswhite v. Barnes,* 139 Va. 471, 124 S.E. 242 (1924).

■ The basis of plaintiff's claim of assault and battery against defendant Campbell is founded upon a single event; Campbell allegedly touched her on her shoulders, neck, and ears upon greeting her. Defs'. Mem. at p. 33 (citing Kidwell Dep. at p. 210). As to defendant Rinker, plaintiff's claim rests on more numerous incidents, including his rubbing his genitals against her. Rinker does not seek, and shall not receive, summary judgment on the assault and battery claim against him. Campbell and the corporate defendants object to the Magistrate's recommendation that summary judgment in their favor be denied on this claim.

Defendants contend that Campbell's contact with plaintiff does not qualify as an

assault and battery because there is no evidence that the touch was rude, insolent, angry, or that it continued after plaintiff asked him to cease. Plaintiff's testimony contradicts this version of events and creates a material and genuine issue for the fact finder to resolve. According to Kidwell's deposition, Campbell rubbed her neck, ears, and hair and continued doing so after she requested that he stop. Pl's. Mem. at p. 11. This action qualifies as insolent, not just friendly, for summary judgment purposes. Therefore, defendants' argument that summary judgment should issue in favor of Campbell must be rejected.

### 2. Corporate Defendants

■ Here, Ms. Kidwell argues in her objections that the corporate defendants should be held liable for the alleged assault and batteries by the individual defendants under Virginia's *respondeat superior* principles. The only issue to be decided here is whether the conduct of the individual defendants fell within the scope of their employment; if not, the corporate defendants cannot be held liable by operation of *respondeat superior. See Hott*, 922 F.Supp. at 1126.

In *Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir.1994) (citations omitted), the Fourth Circuit articulated what it then believed the legal standard to be in Virginia as follows:

> [U]nder Virginia law, an act is within the scope of employment only if it is "fairly incident to [the master's] business, done while the servant was engaged upon the master's business ... done, although mistakenly or ill-advisedly, with a view to further the master's interest or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

The court concluded that harassment by a supervisor did not fall within the scope of employment. Virginia courts, dealing with the same issue in the backdrop of the Worker's Compensation Act, have reached similar conclusions. This court, in its September 13, 1996 Memorandum Opinion, cited those cases with approval, stating as follows:

Although defendants are right that Virginia's Workers' Compensation Act provides exclusive coverage when it applies, *see* Va. Code § 65.2–307, defendants have failed to demonstrate that, as a matter of law, the statute is available to plaintiff insofar as she has asserted a claim for assault and battery. The Act only applies, *inter alia*, to conduct arising out of the employment relationship, and acts "of a personal nature and not directed against the recipients as employees or in furtherance of the employer's business" do not arise out of the employment relationship as a matter of law. *Richmond Richmond Newspapers, Inc. v. Hazelwood*, 249 Va. 369, 375, 457 S.E.2d 56, 59 (1995). Even if common sense did not inform one that in the normal course of events sexual harassment (in the form of assault and battery or otherwise) is not perpetrated for the employer's sake, the Virginia Supreme Court has held that assault is not necessarily covered by Virginia's Workers' Compensation Act. *Richmond Newspapers*, 249 Va. at 372–75, 457 S.E.2d at 58–59 (holding that "goosing" did not arise out of the employment relationship and thus was not an injury covered by Virginia's Workers' Compensation Act); *id.* (citing with approval *City of Richmond v. Braxton*, 230 Va. 161, 165, 335 S.E.2d 259, 262 (1985) (holding that supervisor's sexual harassment of the plaintiff did not arise out of employment because such conduct was not done in furtherance of the employer's business, was of a personal nature, and employment did not increase risk of this type of injury)). Surely we have not yet reached the point where a court can say that as a matter of law working as a cashier carries with it the increased risk of sexual harassment by one's supervisors. Nor can it be said as a matter of law that such harassment is not personal, but rather committed to further an employer's business interests. Therefore, defendants' arguments invoking the exclusivity provision of Virginia's Workers' Compensation Act ... must fail.

Plaintiff responds that the question whether the assault and battery was in the scope of employment must be decided by a jury. Virginia authority (more recent than *Jamison* or the cases cited by this court in its September

13, 1996 Memorandum Opinion) supports the plaintiff's contention and likely has altered significantly the *respondeat superior* doctrine in the Commonwealth.

In *Plummer v. Center Psychiatrists*, Ltd., 252 Va. 233, 476 S.E.2d 172 (1996), a case cited by none of the parties to this case, the Virginia Supreme Court seems to have held that once a plaintiff has established facts showing that an employee's offending conduct occurred while that employee was performing his duties of employment, the burden shifts to the employer to demonstrate that the offending employee "was not acting within the scope of his employment." 476 S.E.2d at 175 (emphasis added). At the very least, *Plummer* appears to admonish that the issue of whether an offending employee was or was not acting within the scope of his employment is one for a jury to decide. *Id.* at 176 (even when the specific issue was whether a psychologist who had sexual intercourse with a patient acted within the scope of his employment).

This court recognizes that Plummer was decided at the demurrer (motion to dismiss) stage of the State court proceedings. Its impact, however, extends far beyond the pleadings stage whether it is interpreted broadly as establishing a shifted burden of production or more narrowly in terms of scope of employment issue being a fact-based jury question.[3]

## C. Breach of Contract

■ Pointing to written statements promulgating defendants' policy against sexual harassment, plaintiff contends that defendants breached a "contract" between themselves and plaintiff by subjecting her to sexual harassment.

As defendants rightly point out, plaintiff ignores the fact that these policy statements were accompanied by express disclaimers of any contractual relationship and a reaffirmation of plaintiff's status as an at–will employee (one who can be fired for good reason, bad reason, or no reason). No contract was created and, consequently, no contract was

breached. Defendants are entitled to judgment as a matter of law on plaintiff's breach of contract claim. Plaintiff's objection to this recommendation of the Magistrate is without merit and, accordingly, is overruled.

## D. Defamation

■ Virginia law requires the following elements for a defamation claim: (1) publication about the plaintiff, (2) an actionable statement; and (3) the requisite intent. *Chapin v. Greve*, 787 F.Supp. 557, 562 (E.D.Va.1992), *aff'd*, 993 F.2d 1087 (4th Cir. 1993). To be actionable, a statement must be false and defamatory. *Id.* A defamatory statement is "more than merely unpleasant or offensive; it must make the plaintiff appear odious, infamous, or ridiculous." *Id.* (internal quotations and citations omitted). "she meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation." *Carwile v. Richmond Newspapers*, 196 Va. 1, 82 S.E.2d 588, 592 (1954). Unless evidence of special damages is adduced, the alleged defamation must necessarily be of the kind of injury that would harm the plaintiff's trade or business. *Fleming v. Moore*, 221 Va. 884, 275 S.E.2d 632 (1981) (holding that accusation of racism hurled at university professor did not rise to level of defamation *per se*).

■ Plaintiff has alleged no special damages; instead, she claims damages must be presumed because defendants' statements were defamatory *per se*. Plaintiff relies upon a newspaper article published in the *Winchester Star* where Sheetz' Vice President stated that no one in his office had knowledge of plaintiff's allegations before she filed her lawsuit. This statement, plaintiff urges, led the world to think she had fabricated the charges of sexual harassment. Second, plaintiff's amended complaint alleges that several managers at Sheetz impugned her abilities as an employee by stating that she was fired for having violated company policy.

For purposes of plaintiff's motion for summary judgment, defendants do not dispute

---

**3.** This court is not alone in construing *Plummer* as a seminal case which may have altered significantly the law of *respondeat superior* in Virginia. In *Doe v. Bruton Parish Church*, VLW 097–8–286 (Cir. Ct., City of Williamsburg, 1997), the court permitted a plaintiff to go forward on the *Plummer* court's interpretation of *respondeat superior* because the court could not reconcile it with previous Virginia decisional authority.

falsity. Defendants argue that the alleged falsehoods are, as a matter of law, too mild to reach the level of defamation *per se.* This court, following the Magistrate's recommendation, agrees. Plaintiff's hyperbole notwithstanding, the alleged falsehoods fall far beneath the standard for defamation *per se.* This reality provides an independent ground to grant defendants' motion for summary judgment.

 Further, defendants contend that the intercorporate statements and communications with the newspaper are qualifiedly privileged. Actual malice must be shown by clear and convincing evidence to defeat qualified privilege. *Great Coastal Exp., Inc. v. Ellington,* 230 Va. 142, 334 S.E.2d 846 (1985). Here, defendants urge that plaintiff has presented no evidence of actual malice.

Plaintiff objects to the Magistrate's Report with the rejoinder that whether actual malice existed is a jury question. Again, that is true only when evidence of such actual malice is adduced. Here, Kidwell has offered no such evidence and, hence, there is nothing to submit to the jury. Therefore, summary judgment in favor of defendants should issue.

*IV Conclusion*

For the reasons set forth above, summary judgment shall be, and hereby is, granted in favor of all defendants on COUNTS V and XII and in favor of Sheetz and Fox Mountain on COUNTS I and XI. Summary judgment shall be, and hereby is, denied on all other COUNTS.

### REPORT AND RECOMMENDATION

CRIGLER, United States Magistrate Judge.

This action is again before this court under authority of 28 U.S.C. § 636(b)(1)(B), this time to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the defendants' motions for summary judgment. The parties presented oral argument on April 1, 1997 in consequence whereof this report issues.

### BACKGROUND

Much of the background of this case has been summarized by the presiding District Judge in his September 13, 1996 Memorandum Opinion granting, in part, and denying, in part, defendants' motions to dismiss. Plaintiff is a former cashier for Sheetz, Inc. ("Sheetz") and Fox Mountain, Inc. ("Fox Mountain") in a store managed by the defendant Michael Rinker ("Rinker"). Robert Campbell ("Campbell") was the district supervisor over Rinker.

Plaintiff claims that throughout her employment she was subjected to unwelcomed sexual harassment by Rinker and Campbell. Particularly, she has testified that Rinker routinely touched his genitals in her presence and in the presence of other female employees; he made sexually explicit remarks to or about her; he often read and commented upon pornography that was sold in the store; and he intentionally pressed his genitals against plaintiff on occasions. She claims Campbell engaged in unwelcomed physical contact with her. When she protested her treatment by the two individual defendants, plaintiff claims she was retaliated against, falsely accused of violating company policy and, on this pretext, was terminated from her employment by Rinker and Campbell. After her discharge, plaintiff filed a charge with the EEOC and thereafter commenced this action.

By her various complaints, plaintiff set forth eight claims for relief. The presiding District Judge, however, dismissed some claims. As against the corporate defendants there remain COUNT I (*quid pro quo* sexual harassment), COUNT II (hostile work environment), COUNT III (retaliation), COUNT V (state law claim of sexual battery), COUNT VI (state law claim of assault and battery), COUNT XI (state law claim of breach of contract), COUNT XII (state law claim for defamation). Also remaining against Rinker and Campbell are COUNT V (state law claim for sexual battery), COUNT VI (state law claim for assault and battery) and COUNT XII (state law claim for defamation). The court will first address the federal claims under Title VII, then plaintiff's state law claims.

### I. TITLE VII CLAIMS

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment prac-

tice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment, therefore, is actionable, and it can take two distinct forms, namely: (a) that which creates an offensive work environment ("conditions of work"), and (b) that in which the employer demands sexual consideration in exchange for job benefits ("*quid pro quo*"). *Katz v. Dole,* 709 F.2d 251 (4th Cir.1983). Moreover, retaliation for complaining about Title VII violations also is actionable. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985).

## A. *Quid Pro Quo* Sexual Harassment (COUNT I)

In *Spencer v. General Electric Co.,* 894 F.2d 651 (4th Cir.1990), it was held that a plaintiff can establish *a prima facie* case by showing:

1. The employee belongs to a protected group;

2. The employee was subjected to unwelcomed sexual harassment;

3. The harassment was based upon gender;

4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions or privileges of employment in that it was an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment; and

5. The employer knew or should have known of the harassment and took no remedial action.[1]

For summary judgment purposes, once the employee has made out a *prima facie* case of *quid pro quo* harassment, the burden shifts to the employer to rebut the presumption of discrimination with evidence of legitimate, nondiscriminatory reasons for the job action. *Spencer,* 894 F.2d at 659. *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973). If that occurs, the burden shifts back to the plaintiff to demonstrate that the reason was pretextual, keeping in mind that the overall burden to prove discrimination by the preponderance of the evidence never shifts away from the claimant. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Defendants seek summary judgment on this claim on the ground that there is no evidence of any demand for sexual favors in exchange for a job benefit. Plaintiff opposes summary judgment on this claim, pointing to her testimony that when she ignored the overtures of her supervisors she was shackled with heavier work loads, less favorable scheduling and unfair performance ratings which affected her compensation and eventually led to her termination. However, as noted by defendants, plaintiff conceded that neither Rinker nor Campbell actually asked her for sexual favors or dates, though she has continued to insist that her failure to respond to their overtures resulted in her being treated less favorably than if she had responded in a way that more suited them.

The corporate defendants rely on *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771 (D.Nev. 1992), for the proposition that plaintiff's *quid pro quo* claim is essentially a hostile environment claim in disguise. This contention ignores, however, the simple fact that the elements of a hostile environment claim also may be ingredients of a *quid pro quo* claim, the latter adding to the mix, of course, a tangible job detriment. Moreover, this court believes that *Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114 (W.D.Va.1996), compels a different approach than that taken by defendants and a result contrary to the one they seek. For summary judgment purposes, the court and the trier of fact, for that matter, are entitled to look to "a broad spectrum of circumstances" in determining whether a plaintiff has been subjected to a job detriment for failing to acquiesce in a supervisor's harassment. *Id.* at 1123. That is to say, just because there is no evidence of a direct request for sexual favors or evidence of job loss

---

1. Important to this case, *Spencer* counsels that where the act was committed by a supervisor, this element is met because knowledge of the supervisor is imputed to the employer. *Spencer,*

894 F.2d at 658 n. 10. *See also Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1351 n. 3 (4th Cir. 1995).

does not end the inquiry. Nor does the court believe that having a legitimate reason to terminate an employee altogether eliminates liability of a corporate employer for conduct through its supervisory staff that was both harassing and resulted in changes in working conditions when the employee failed or refused to acquiesce before the termination. The synergistic effects of all the facts and circumstance may be evaluated in deciding whether a job benefit was sacrificed when acquiescence was refused.

This court believes that this is a task for the trier of fact, and it suggests that the presiding District Court not allow the corporate defendants to construct a dispositive defense to plaintiff's *quid pro quo* claim by asserting that plaintiff only has shown, if anything, a hostile environment, and that she would have been fired anyway. There is considerable evidence in this record indicating that others who acquiesced received more favorable treatment in the workplace than did plaintiff, and there is certainly evidence, if believed, that would show her conditions changed when she failed to acquiesce. The motion for summary judgment on the *quid pro quo* claim should be denied, and it is so

RECOMMENDED.

**B. Hostile Work Environment (COUNT II)**

Sexual harassment based upon a hostile work environment exists when "there are sexual advances, fondling or a sexually suggestive workplace atmosphere that the claimant finds unwelcome." *Walker v. Sullair Corp.*, 736 F.Supp. 94, 100 (W.D.N.C.1990). It is characterized by a pervasion of sexual slur, verbal sexual harassment, insult and innuendo, as well as by extremely vulgar and offensive sexually related epithets toward or about an employee. *Id.; see also Katz*, 709 F.2d at 254.

In order to prevail against a motion for summary judgment on a hostile environment

claim, plaintiff must make a *prima facie* showing that sexually harassing conduct occurred, and that the employer knew or should have know about the harassment but took no effectual steps to correct or prevent it. *Katz*, 709 F.2d at 256. In order to demonstrate a hostile environment, the plaintiff must produce evidence that the conduct was unwelcomed, that the harassment was gender based, and that it was sufficiently severe or pervasive to create an abusive work environment. *Swentek v. USAIR, Inc.*, 830 F.2d 552 (4th Cir.1987); *see also Hammill v. Albemarle County School Bd.*, Civil Action No. 93–00031–C, 1994 WL 147753 (W.D.Va. April 18, 1994).

Defendants initially contend that, irrespective of plaintiff's specific evidence concerning the nature of the conduct, she cannot prevail on this claim because the offensive conduct was not pervasive or severe as a matter of law. Equally, and citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), *Andrade v. Mayfair Management, Inc.*, 88 F.3d 258 (4th Cir.1996), as well as the decision by the Court of Appeals for the District of Columbia in *Gary v. Long*, 59 F.3d 1391 (D.C.Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995), Sheetz and Fox Mountain offer that the alleged conduct of Rinker and Campbell was outside the scope of their corporate sexual harassment policy and procedures, as a result of which their individual conduct cannot be attributed to the corporate employer. To put it another way, these corporate defendants believe that the presence of a sexual harassment policy and grievance procedure insulates them from liability based upon what they characterized as unauthorized and random conduct of their supervisory staff. They ask this court to go even further to hold that any failure on the part of plaintiff to engage the corporate grievance process should bar her claims here. *See Ridley v. District of Columbia*, 945 F.Supp. 333 (D.D.C.1996).[2]

---

2. The court notes here that the defendants oppose plaintiff's claim to the extent it is premised on evidence related to the alleged "bathroom incident." They believe this incident was not within the purview of the original EEOC charge and, thus, cannot be introduced into evidence or otherwise relied on by plaintiff to prove a hostile environment. This court disagrees because the EEOC charge was sufficient to put defendants on notice of sexual harassment, and it is this court's view that not every stitch of evidence against an employer need be parsed in the EEOC charge to preserve the right to introduce it or rely on it at trial should EEOC conciliation fail, *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir.1976).

Plaintiff's response to defendants on these issues is simple and straightforward. She argues the evidence demonstrates that the defendants' sexual harassment policy and procedures may have existed on paper, but that they were ineffectual and failed to achieve the purpose for which they supposedly were intended. Plaintiff relies on the testimony of defendants' own witness, Mr. Thomas, to the extent he stated or implied that the defendants' policy and procedures were not effective. She further believes that Campbell and Rinker revealed in their own testimony and in their conduct on the job the ineffectiveness of the corporate policy at the time the incidents relevant to this case occurred. Particularly, Kidwell points to Rinker's testimony that his conduct did not violate corporate policy to demonstrate the inconsistency between the defense Sheetz and Fox Mountain offer and the facts related to the conduct of their supervisors and the efficacy of their corporate policy. To put plaintiff's position in simple terms, she believes that in order for defendants to prevail on their effective corporate policy defense, the policy must be effective, and there are genuine issues of material fact on that very question in this case.

It is true that the Court of Appeals for the Fourth Circuit in *Andrade* recognized that there is some limitation on corporate liability for sexual harassment by supervisors and that illegal sexual harassment ordinarily is considered beyond the scope of employment. However, this court simply cannot accept the interpretation of *Andrade* that defendants offer under the circumstances presented in this case. Here both the immediate supervisor and the district supervisor engaged in conduct that allegedly was offensive. Under the circumstances presented, this court is of the view that a reasonable trier of fact could conclude both that the policy was ineffectual because plaintiff, in reality, had no place to turn and that the employer knew or should have known that the conduct was occurring but failed to take corrective action. In *Andrade,* the employee had available to her direct access to a corporate representative not involved in any unlawful practice. It is

not so clear on the facts of this case that such access was known by or reasonably available to Kidwell despite defendants' suggestions to the contrary.[3] A resolution of that fact is best left to a jury.

Therefore, this court RECOMMENDS that the motions for summary judgment on plaintiff's hostile environment claim be denied.

### C. Retaliation (COUNT III)

To prevail on a claim for retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity under Title VII, (2) that her employer took adverse action against her, and (3) that there was a causal connection between the protected activity and the job action. *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30. (1996); *Ross,* 759 F.2d 355. If the plaintiff makes out a *prima facie* case of retaliation, the employer is entitled to articulate a legitimate nondiscriminatory reason for the job action, subject, however, to countervailing evidence by plaintiff that the reason articulated was pretextual. In the end, plaintiff must be able to produce evidence upon which a trier of fact might conclude that, "but for" her protected activity, plaintiff would not have suffered adverse job action. *Ross,* 759 F.2d at 366.

Defendants take the position that plaintiff's evidence has failed to establish a "but for" connection between her alleged protected activity and any job action. They essentially rely on the same arguments advanced in their *quid pro quo* defense to support their position on plaintiff's retaliation claim, punctuated by evidence in this record to demonstrate that plaintiff violated several company policies related to daily transactional reporting. Plaintiff counters with evidence of disparate application of the policies plaintiff allegedly violated, laying a circumstantial foundation for an inference that the reasons cited for defendants' job action was pretextual.

---

**3.** As the court understands the policy, Kidwell would still have to address her grievances with

the very supervisors who were offending her.

For the same reasons this court believes there are genuine issues of material fact on the *quid pro quo* and hostile environment claims, the court equally believes there are genuine issues of fact on plaintiffs retaliation claim. There is enough evidence in this record that a trier of fact could find that everything plaintiff said happened to her was the direct result of her failure to acquiesce in and her efforts to complain about the events occurring in the workplace. The motions for summary judgment on plaintiff's retaliation claim should be denied, and it is so RECOMMENDED.

## II. SUPPLEMENTAL STATE LAW CLAIMS

### A. Sexual Assault and Battery and Assault and Battery (COUNTS V and VI)

There are several levels of consideration here in view of the fact that both Rinker and Campbell are charged with sexual assault and battery and common law assault and battery, and the corporate defendants are alleged to be vicariously liable for the conduct of both corporate employees. Rinker has moved for summary judgment on just the sexual assault and battery count. Campbell and the corporate defendant's have moved for summary judgment on both state law claims.

Rinker challenges the sufficiency of plaintiffs sexual assault and battery claim against him on two fronts. The first is that no cause of action exists in Virginia to support such a claim, which contention this court and the presiding District Judge rejected when the motions to dismiss were overruled. *See also Jamison v. Wiley*, 14 F.3d 222 (4th Cir.1994); *Pizzino v. J. Dillard Hutchens Corp.*, 1996 Lexis 14291 (W.D.Va. August 8, 1996) (Kiser, Chief Judge).[4]

Rinker's second front is that there is no evidence of force, threat or intimidation, which defendants believe is critical to a sexual assault and battery claim. Plaintiff responds not by pointing to evidence of threat, force or intimidation but simply by relying on the fact that the alleged conduct was committed by supervisory personnel and suggesting that ordering plaintiff to clean what she believed to be semen from the toilets constituted such force, threat or intimidation.

This court finds defendants' position here to be compelling in that something more than just the authority imposed by a supervisor/employee relationship must be demonstrated to allow a jury to infer threat, force or intimidation. Moreover, this court rejects the notion that by requiring an employee to clean a bathroom, a jury can infer that she was sexually assaulted. Therefore, this court RECOMMENDS that summary judgment enter against plaintiff on her sexual assault and battery claims against both the individual defendants and the corporate defendants under the theory of *respondeat superior*.

The common law assault and battery claims against the individuals, however, stand on more substantial footing. Any unconsented touching of another may constitute assault and battery under the Virginia common law, provided it is done in a rude, indolent or angry way. *Wood v. Commonwealth*, 149 Va. 401, 140 S.E. 114 (1927). Rinker does not seek summary judgment on plaintiff's claim against him, but Campbell suggests that his contact with her does not amount to a common law assault and battery as a matter of law. If plaintiff's testimony is accepted by the trier of fact, there is ample evidence upon which a jury could conclude that Campbell's rubbing plaintiff's neck, ears and hair after he was asked to stop constituted a common law assault and battery. Thus, it is RECOMMENDED that Campbell's motion for summary judgment be denied.

Sheetz and Fox Mountain maintain that the alleged assaults and batteries were outside Rinker's and Campbell's scope of employment, and they cannot be attributed to the corporate defendants vicariously under Virginia's doctrine of *respondeat superior*. *Jamison*, 14 F.3d 222; *Hott*, 922 F.Supp. 1114. Plaintiff responds simply by suggesting to the court that whether the individuals were advancing the interests of their corpo-

---

4. This court is not inclined to accept a decision by a Virginia Circuit Court in *Fox v. Rich Prods. Corp.*, 34 Va. Cir. Ct. 403 (1994), as precedent, for that court subsumed a sexual assault and battery claim in the plaintiff's simple assault and battery claim.

rate employer is a question of fact for the jury.

The problem this court has with plaintiff's position is that there is no evidence to suggest the conduct complained of naturally grew out of either employee's view toward furthering his master's business as opposed to arising out of some external personal motive to act on his own accord. *Jamison*, 14 F.3d at 237. Absent that evidence, the court only could conclude that the conduct of Campbell and Rinker fell outside the scope of their employment under Virginia law.[5]

Therefore, this court RECOMMENDS that summary judgment be granted to Sheetz and Fox Mountain on plaintiff's assault and battery claims.

### B. Breach of Contract (COUNT XI)

Plaintiff premises her entire contract theory upon recitations in defendants' policy manual that prohibit sexual harassment. She claims that a violation of that prohibition also is a breach of her employment contract. As defendants point out, the policy statements expressly disclaim the notion that they are contractual in any way or that they limit plaintiff's employment at will.

It is RECOMMENDED that defendants' motion for summary judgment on this claim be granted as the evidence fails to show that plaintiff's employment was anything but at will, and plaintiff has failed to show any valid contractual provisions which defendant breached.

### C. Defamation (COUNT XII)

Because plaintiff has conceded that the qualified privilege attaching to intercorporate communications exists in this case, in order to prevail on her state law claim of defamation, she must show by the greater weight of evidence that a false and defamatory statement about her was published, and by clear and convincing evidence that such was done with actual malice. *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 334 S.E.2d 846 (1985). This claim will not long detain the court.

Plaintiff has failed to produce evidence upon which a trier of fact could conclude by the clear and convincing evidence that the defendants acted with actual malice. Her argument that this should be a matter for the jury does not hold water because there is not one iota of evidence to support that argument. Accordingly, it is RECOMMENDED that summary judgment be granted in favor of all defendants on plaintiff's defamation claim.

### SUMMARY

For the reasons set forth above, this court RECOMMENDS that summary Judgment be granted in favor of all defendants on COUNT V and COUNT XII and in favor of Sheetz and Fox Mountain on COUNT VI and COUNT XI, but that summary judgment be denied on all other claims.

The Clerk is directed to immediately transmit the record in this case to the Hon. James H. Michael, Jr., United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

---

**5.** Lest there be confusion, the court distinguishes here between Title VII principles related to employer liability for acts of supervisory employees and those under Virginia's doctrine of *respondeat superior*.